UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CEP HOLDINGS, INC., Plaintiff/Counter Defendant,

v. Civil Action No. 3:26-cv-53-DJH-LLK

KPFF, INC., Defendant/Counter Claimant,

and

BSI ENGINEERING, LLC, Defendant.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter Defendant CEP Holdings sued Defendant/Counter Claimant KPFF, Inc. and Defendant BSI Engineering, LLC in Jefferson Circuit Court, asserting a variety of state-law contract, negligence, and misrepresentation claims. (Docket No. 1-1) KPFF removed the case to this Court. (D.N. 1) BSI now moves for dismissal of the single negligent-misrepresentation claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 8) CEP Holdings opposes the motion. (D.N. 21) After careful consideration, the Court will grant the motion to dismiss for the reasons set forth below.

**I.**

The following facts are set out in the complaint and accepted as true for purposes of the motion to dismiss. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)). CEP Holdings owns a gypsum-fertilizer manufacturing facility located in Marissa, Illinois. (*See* D.N. 1-1, PageID.8 ¶ 1; *id.*, PageID.21 ¶¶ 23–25) In August 2023, CEP Holdings retained KPFF to "provide structural, mechanical, and process engineering required to design, equip, construct, and commission" the new Marissa plant. (*Id.*, PageID.8 ¶ 2) In turn,

KPFF retained BSI to provide "process-engineering support, including preparing technical information, process-related criteria, and equipment and specialty-item lists." (*Id.*, PageID.9 ¶ 4) As part of this process, BSI prepared items such as "the Process Design Basis, the Mass & Energy Balance, the [Process Flow Diagram]s, the [Piping & Instrumentation Diagram]s, and the related equipment lists and specialty-item lists." (*Id.*, PageID.34 ¶ 161) KPFF and BSI were aware that the facility would need to be able to process contractually mandated commercial volumes, specifically 100,000 tons of gypsum fertilizer per year with additional capacity for up to 125,000 tons under "normal operating conditions." (*Id.*, PageID.12 ¶ 26; *id.*, PageID.16 ¶¶ 44–45)

The Marissa plant commenced operations in April 2025 but immediately experienced "severe structural vibration in the C1 Process Building and chronic failures in the raw and recycle pneumatic-conveyance systems," which prevented the facility from achieving its required production. (*Id.*, PageID.9 ¶ 6) Between April and September of that year, KPFF represented to CEP Holdings that it was investigating and working with BSI to prepare the necessary "remedial engineering packages" to resolve the production problems at the Marissa facility. (*Id.* ¶¶ 7–8) In August 2025, BSI "prepared a feasibility analysis based upon the key operating conditions it observed during startup." (*Id.*, PageID.10 ¶ 10) A few weeks before the date CEP Holdings was expecting the remedial engineering packages, KPFF asserted for the first time that it bore no responsibility for the issues at the Marissa facility and stated that KPFF and BSI would not provide the corrective engineering services that KPFF had previously promised. (*Id.* ¶ 12) CEP Holdings alleges that the losses attributable to the defendants include "costs associated with obtaining and implementing the corrective-engineering measures; costs to landfill unusable gypsum supply[;] lost production and operational inefficiencies resulting from the Marissa Plant's inability to

achieve required throughput; the Marissa Plant's resulting inability to meet output commitments to a purchaser; and other commercially foreseeable damages." (*Id.*, PageID.21 ¶ 81)

CEP Holdings sued KPFF and BSI in state court over the output problems at the Marissa facility, and the case was removed to this Court in January 2026. (*See* D.N. 1; D.N. 1-1) BSI moves to dismiss the negligent-misrepresentation claim against it for failure to state a claim, arguing that CEP Holdings has not met the heightened pleading standard under Federal Rule of Civil Procedure 9(b). (*See* D.N. 8, Page.ID 88–89) BSI also argues that the type of opinions and future predictions that CEP Holdings alleges were provided by BSI cannot support a negligent-misrepresentation claim. (*Id.*, PageID.89–92) In response, CEP Holdings contends that BSI attempts to impose "overly stringent pleading requirements" (D.N. 21, PageID.130) and that even if a heightened pleading standard applies, CEP Holdings has adequately pleaded the negligent-misrepresentation claim. (*See id.*, PageID.132–34)

Also pending is KPFF's Rule 12(b)(6) motion to dismiss all claims asserted against it for failure to mediate prior to filing suit in accordance with the contract between KPFF and CEP Holdings. (D.N. 9) Because KPFF's subsequently filed reply indicated that the parties had scheduled mediation (D.N. 24, PageID.165 n.1), the Court ordered KPFF and CEP Holdings to file a joint status report. (D.N. 25) The parties' joint status report stated that mediation had occurred between KPFF and CEP Holdings (D.N. 27), and KPFF now moves to withdraw its motion to dismiss (D.N. 26). The Court will therefore grant KPFF's motion to withdraw and consider only BSI's motion below.

## II.

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not "show[n]" that he "is entitled to relief," as required by Rule 8. *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). A complaint will not survive the motion-to-dismiss stage if it "tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court of Kentucky has adopted the following standard for claims of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell Constr. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (quoting Restatement (Second) of Torts § 552); *see id.* at 582 (adopting Restatement standard).

BSI argues that CEP Holdings' negligent-misrepresentation claim does not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) (*see* D.N. 8, Page.ID 88–89), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). CEP Holdings appears to assert that the heightened pleading standard does not apply. (*See* D.N. 21, PageID.132–34) Although CEP Holdings' complaint was originally filed in state court, it is subject to federal pleading standards. *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). And "negligent-misrepresentation claims [asserted] under Kentucky law [in federal court] are subject to Rule

9(b)'s heightened pleading standards."[1] *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247–48 (6th Cir. 2012)).

**A. Rule 9(b)**

Rule 9(b) is to be "interpreted in harmony with Rule 8's statement that a complaint must only provide a short and plain statement of the claim made by simple, concise, and direct allegations." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) (citation modified). Under Rule 9(b), CEP Holdings must plead specific facts as to the content of the representation complained of, when and by whom the representation was made, how BSI gained from the representation, and what made the representation false. *See Republic Bank*, 683 F.3d at 260 (citation omitted); *Brown v. Johnson & Johnson*, No. 3:20-CV-404-DJH-CHL, 2021 WL 869548, at *2 (W.D. Ky. Mar. 4, 2021) (citation omitted). "Rule 9(b)'s overarching purpose is to ensure that a defendant possesses sufficient information to respond" to the complaint. *Ford Motor Co.*, 532 F.3d at 504.

BSI argues that CEP Holdings has not met the Rule 9(b) standard on the ground that it "has failed to (a) specify the statement(s) in question and (b) identify the BSI speaker(s) of the statement(s), along with where and when the statements were made." (D.N. 8, PageID.89) CEP

[1] In arguing that courts have allowed similarly alleged negligent-misrepresentation claims to proceed, CEP Holdings cites two cases decided in state court, where Federal Rule of Civil Procedure 9(b) does not apply. (D.N. 21, PageID.132–33 (citing *Presnell*, 134 S.W.3d 575; *D.W. Wilburn, Inc. v. K. Norman Berry Assocs., Architects, PLLC*, No. 2015–CA–1254–MR, 2016 WL 7405774 (Ky. Ct. App. Dec. 22, 2016))) CEP Holdings correctly notes that the Rule 9(b) standard was not applied to the Kentucky negligent-misrepresentation claim in *Brasfield & Gorrie LLC v. Harrod Concrete & Stone Co.*, No. 3:18-CV-66-GFVT, 2020 WL 3086601 (E.D. Ky. June 10, 2020). Under the circumstances of that case, however, application of the standard was warranted. *See, e.g.*, *Lakeshore Eng'g v. Richmond Utilities Bd.*, No. CIV.A. 5:12-121-KKC, 2014 WL 1168716 (E.D. Ky. Mar. 17, 2014) (modifying prior ruling to apply Rule 9(b) to Kentucky negligent-misrepresentation claim).

Holdings argues in response that it "need not identify the specific BSI employees who made the statements" or identify a specific date the representations were made beyond describing a general time period. (D.N. 21, PageID.135) CEP Holdings also argues that it alleged "the form and content of the misrepresentations with sufficient particularity." (*Id.*) Essentially, CEP Holdings argues that there is "enough detail [in the complaint] to put BSI on notice" of the alleged negligent misrepresentations. (*Id.*)

CEP Holdings alleges that the misrepresentations were "technical information, process-related-criteria, and equipment and specialty-item lists" provided by BSI, specifically "process-engineering assumptions, criteria, operating parameters, and . . . performance ranges."[2] (D.N. 1-1, PageID.9 ¶¶ 4, 5; *see id.*, PageID.14 ¶ 33; *id.*, PageID.34 ¶ 161 (alleging that BSI "prepared and communicated technical information, including the Process Design Basis, the Mass & Energy Balance, the PFDs, the P&IDs, and the related equipment lists and specialty-item lists")) According to CEP Holdings, BSI's "technical information and performance representations indicated that the systems, if implemented in accordance with BSI's assumptions, would operate within certain expected performance ranges." (*Id.*, PageID.34 ¶ 163) CEP Holdings alleges that these representations were later shown to be "inaccurate or incomplete with respect to key operating parameters" (*id.*, PageID.35 ¶ 165) by the "feed rates, operating pressures, vacuum performance, and material handling behavior" observed after the Marissa plant began operations and documented in BSI's August 2025 feasibility analysis (*id.*, PageID.10 ¶¶ 10–11).[3] The

[2] The complaint also references and attaches BSI's initial project proposal as provided by KPFF, which outlines the types of work, schedule, and expected cost for BSI's engineering services. (*See id.*, PageID.13 ¶ 29; *id.*, PageID.53–67) While the proposal outlines BSI's expected deliverables and responsibilities during the Marissa facility project, it does not indicate which of these were eventually provided by BSI, nor does it identify their specific contents. (*Id.*)

[3] As to the specific allegation that BSI's representations were "incomplete" (D.N. 1-1, PageID.35 ¶ 165), the Court notes that "the tort of negligent misrepresentation requires an affirmative false

complaint quotes the feasibility study's conclusion that the Marissa facility's raw pneumatic-conveyance system was "not capable of conveying the design rate of material with the reliability required to maintain 85% on-stream time," alleging that "[t]hese findings materially contradicted the process assumptions and technical information" that BSI had previously provided.[4] (*Id.*, PageID.18 ¶¶ 57–58)

Although CEP Holdings names a variety of materials prepared by BSI that contained the alleged misrepresentations (*id.*, PageID.34 ¶ 161), it does not specify the content of any of the representations. (*See generally id.*) This failure to identify particular statements and representations is fatal to CEP Holdings' negligent-misrepresentation claim against BSI. *See* Fed. R. Civ. P. 9(b); *see, e.g.*, *Blair v. Johnson & Johnson*, No. 3:19-CV-333-DJH-RSE, 2020 WL 1172715, at *6 (W.D. Ky. Mar. 11, 2020) (finding that complaint's "mentions of vague representations" where plaintiff alleged fraud and negligent misrepresentation were "not enough" to satisfy Rule 9(b)); *Parton v. Parton*, No. 6:22-CV-00018-GFVT, 2023 WL 2146374, at *2–3 (E.D. Ky. Feb. 21, 2023) (finding that complaint did not meet Rule 9(b) standard where it alleged that defendant made false claims "'throughout [a] lawsuit,' including [during] expert witness testimony," and also alleged that defendant "represented to [plaintiff] and the federal court that [defendant] had the same assets during trial that it had when the Lawsuit was filed"); *Winkler v. Bos. Sci. Corp.*, No. CV 5:17-274-KKC, 2018 WL 1474067, at *4–5 (E.D. Ky. Mar. 26, 2018)

---

statement" and that "a mere omission will not do." *Post v. Lee Masonry Prods.*, Inc., No. 2012-CA-001935-MR, 2013 WL 6571798, at *4 (Ky. Ct. App. Dec. 13, 2013) (citation modified) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 746 (Ky. 2011)).

[4] Although the complaint provides the month that BSI's feasibility study was issued, details the list of pneumatic-conveyance-system deficiencies it identified, and quotes its acknowledgment of the capacity and on-stream time targets for the Marissa plant (*see* D.N. 1-1, PageID.15 ¶ 37; *id.*, PageID.17–18 ¶¶ 55–56), CEP Holdings does not appear to allege that the feasibility study itself contained any misrepresentations. (*See id.*, PageID.34–35)

(finding plaintiff's complaint insufficient under Rule 9(b) where he failed to allege "specific warnings," "specific statements, the speaker [on behalf of the corporate defendant], or the date on which the[] alleged statements were made"); *Bland v. Abbott Lab'ys, Inc.*, No. 3:11-CV-430-H, 2012 WL 32577, at *2 (W.D. Ky. Jan. 6, 2012) (examining intentional-misrepresentation claim under Rule 9(b) and finding that complaint lacked specific safety-related statements constituting misrepresentation despite alleging that defendant's "'promotion, marketing, advertising, packaging, labeling, and other means' represented to the public that Similac was safe for consumption").

The parties additionally dispute whether Rule 9(b) requires CEP Holdings to allege the location, time, speaker, and recipient of any of the statements. (*See* D.N. 8, PageID.89; D.N. 21, PageID.135) Had CEP Holdings identified specific representations, the Court might have been able to infer other details without their explicit inclusion in the complaint. *See, e.g.*, *Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348 (6th Cir. 2020) (holding that Rule 9(b) was met where complaint did not identify specific individual who made alleged misrepresentation but identified corporate defendant, time, place, and content of the misrepresentation); *Wilson v. Homecomings Fin. Network, Inc.*, 407 F. Supp. 2d 893, 895–96 (N.D. Ohio 2005) (finding that Rule 9(b) was satisfied despite the fact that specific date of misrepresentations and individual identities of speakers were not alleged because the "complaint identifie[d] the contents of the alleged false statements" and defendant could determine specific speakers by looking at the signatories on the documents produced in the general time period alleged). Here, however, CEP alleges that the misrepresentations were made in numerous documents (*see, e.g.*, D.N. 1-1 PageID.34 ¶ 161) produced in the year-plus period between the signing of the agreement with KPFF in August 2023 and the opening of the Marissa facility in

April 2025 (*see* D.N. 21, PageID.135 (citing D.N. 1-1, PageID.8–9 ¶¶ 2–6)).[5] Further, CEP Holdings appears to concede that it is unable to more specifically determine the misrepresentations BSI made without the aid of discovery. (*See* D.N. 21, PageID.134, 136) But "Rule 9(b) is designed . . . to prevent fishing expeditions . . . and to narrow potentially wide-ranging discovery to relevant matters." *Republic Bank*, 683 F.3d at 248 (quotation omitted); *see also Blair*, 2020 WL 1172715, at *6 (finding that facts found through initial discovery could not be considered as part of pleadings to satisfy Rule 9(b)). And while CEP Holdings relies on *Michaels Building Co. v. Ameritrust Co.* in arguing that it is entitled to flesh out "further detail" through discovery (D.N. 21, PageID.136), the *Michaels* court found that "the information 'missing' from [the] plaintiffs' complaint . . . [was] far outweighed by the sufficiency of the description of the claim against the defendants" because the "only fact that [the] plaintiffs omit[ted] from their complaint [was] the identities of borrowers who received sub-prime loans." 848 F.2d 674, 680 (6th Cir. 1988) (noting also that the complaint "specifie[d] the parties and the participants to the alleged fraud, the representations made, the nature in which the statements [were] alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud" (footnote omitted)).

CEP Holdings also alleges that BSI was aware that the Marissa plant had "contractual input [and output] commitments" and that the facility was "being designed and constructed for the purpose of producing and selling gypsum fertilizer at commercial volumes." (D.N. 1-1, PageID.16 ¶¶ 44–45) Even if these allegations met the Rule 9(b) standard, they could not support a claim of negligent misrepresentation because they rest on the implied representation that the information

[5] Based on BSI's proposed schedule before the Marissa project began, it appears that BSI may have provided its final work product prior to the opening of the Marissa facility around February 2024. (*See* D.N. 1-1, PageID.55)

BSI provided would result in a gypsum-processing plant that met the 100,000 tons-per-year target capacity. "[I]mplicit representations" cannot support a negligent-misrepresentation claim; rather, "negligent misrepresentation requires an affirmative false statement." *Giddings*, 348 S.W.3d at 746 (citations omitted). CEP Holdings' complaint provides no "affirmative false statement" made by BSI regarding the Marissa plant's target output and commercial obligations. *See id.*

In sum, the complaint does not meet the Rule 9(b) standard as to the negligent-misrepresentation claim against BSI.[6] *See* Fed. R. Civ. P. 9(b); *Republic Bank*, 683 F.3d at 260; *Brown v. Johnson & Johnson*, 2021 WL 869548, at *2; *Blair*, 2020 WL 1172715, at *6; *Parton*, 2023 WL 2146374, at *2–3. The negligent-misrepresentation claim against BSI will therefore be dismissed.

**B. Request for Leave to Amend**

CEP Holdings' response brief alternatively requests leave to amend the complaint pursuant to Rule 15(a)(2). (*See* D.N. 21, PageID.138) "A request for a court order granting leave to amend a complaint must be made through a motion." *James v. Norfolk S. Ry. Co.*, No. 24-3275, 2025 WL 2049553, at *9 (6th Cir. July 22, 2025) (citation omitted). CEP Holdings has made no such motion. And while it is generally true that a court should dismiss with leave to amend "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief," "this liberal policy of amendment [does not apply] when plaintiffs make only a cursory request for relief and fail to attach a copy of a proposed amended complaint." *Mitchell v. City of Benton Harbor*, 137 F.4th 420, 442 (6th Cir. 2025) (citation modified). CEP Holdings's request falls into this category. *Compare* (D.N. 21, PageID.138), *with,*

[6] Because the Court will dismiss the negligent-misrepresentation claim as insufficient under Rule 9(b), it does not reach the parties' arguments as to whether BSI's representations constitute opinions or future predictions. (*See* D.N. 8, PageID.91; D.N. 21, PageID.137)

*e.g.*, *Johnson v. Bender Mgmt., LLC*, No. 25-1374, 2025 WL 2742524, at *2 (6th Cir. Sept. 26, 2025) (affirming denial of leave to amend where plaintiff merely stated: "[T]o the extent the Court is inclined to dismiss any of Plaintiff's claims, Plaintiff respectfully requests leave to amend her complaint").

**III.**

For the reasons set out above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) BSI's motion to dismiss (D.N. 8) is **GRANTED**. The Clerk of Court is **DIRECTED** to terminate BSI Engineering, LLC as a defendant in the record of this matter.

(2) KPFF's motion to withdraw (D.N. 26) is **GRANTED**. KPFF's motion to dismiss (D.N. 9) is deemed **WITHDRAWN**. This Memorandum Opinion and Order does not affect CEP Holdings' claims against KPFF.

(3) This matter is **REFERRED** to U.S. Magistrate Judge Lanny King to set a litigation schedule.

August 24, 2026

**David J. Hale, Chief Judge**
**United States District Court**